PER CURIAM.
Merritt, a chiropractic physician, appeals the dismissal of his petition challenging the validity of Rule 61F2-17.007 (now 59N-17.007), Florida Administrative Code, relating to peer review. Following an informal hearing via telephone conference, Hearing *1052 Officer Arnold H. Pollock dismissed the petition having found no basis to invalidate the challenged rule. Finding the challenged rule to be an invalid exercise of delegated legislative authority, we reverse.
Merritt petitioned the Department of Business and Professional Regulation, Board of Chiropractic (Board) pursuant to section 120.56, Florida Statutes (1993) asserting all the grounds listed in section 120.52(8) as the bases for his challenge. Prior to a hearing on the merits, Merritt moved for summary final order asserting that there were no disputed issues of fact and that the challenged rule was invalid as a matter of law. At hearing, the parties presented arguments on the merits of the motion. The hearing officer allowed the Board a time certain following the hearing to submit its rebuttal in writing.
Merritt is a chiropractic physician, licensed and actively practicing in the State of Florida. The challenged rule purports to define statutory terms in order to provide “criteria or standards” to guide peer review pursuant to section 460.4104(9)(a), Florida Statutes (1993). As a “health care provider” licensed under chapter 460, Merritt is subject to the provisions of the challenged rule. The Board promulgated the challenged rule and is responsible for administering it.
The challenged rule and the implemented statute regulate the practice of chiropractic in the state of Florida. “The sole legislative intent for enacting [Chapter 460] is to ensure that every chiropractic physician practicing in this state meets minimum requirements for safe practice.” Section 460.401, Florida Statutes (1993). The legislature delegated to the Board of Chiropractic the authority “to make such rules not inconsistent with law as are necessary to carry out the duties and authority conferred upon the board by [Chapter 460].” Section 460.405, Florida Statutes (1993). In order “to provide for the regulation of the cost of health care and its impact upon the business of insurance,” the legislature authorized the Department of Professional Regulation to “review ... the fees of certain health care providers.” Section 460.4104(1), Florida Statutes (1993). If directed by the Board of Chiropractic, “peer review shall be performed by peer review committees which are constituted by the department or by the department’s contractual arrangements.” Section 460.4104(2), Florida Statutes (1993). “The peer review committee shall file with the department a complaint against a health care provider if it determines that reasonable cause exists to believe the health care provider has violated any provision of [chapter 460] or chapter 455, or rules adopted pursuant thereto.... ” Section 460.4104(4), Florida Statutes (1993). “The findings of a peer review committee on each inquiry submitted to it shall include a determination of whether or not the health care provider properly utilized services and rendered or ordered appropriate medical treatment or services and whether or not the cost of such treatment was appropriate.” Section 460.4104(5), Florida Statutes (1993) (emphasis supplied).
In order to guide the peer review committee the Legislature provided that “[t]he criteria or standards established for peer review shall be adopted by the board as rules pursuant to chapter 120. Such criteria shall be developed to conform with medically accepted standards.” Section 460.4104, Florida Statutes (1993) (emphasis supplied).[1] Chapter 460 defines “medically accepted standards” for peer review purposes as “those standards of care, skill, and treatment which are recognized by a reasonably prudent similar health care provider as being *1053 acceptable under similar conditions and circumstances.” Section 460.403(6), Florida Statutes (1993).
If otherwise valid, the challenged rule does not exceed its grant of rule-making authority. Section 460.405 grants the authority to make such rules not inconsistent with law as are required to carry out the duties and authority conferred upon the board by chapter 460. On its face, the challenged rule purports to define the terms “appi'opriate medical treatment,” “properly utilized services,” and “appropriate costs.” Each of these is a statutory term that constitutes part of the factual determination the peer review committee is required by the statute to make. Section 460.4104(5), Florida Statutes (1993). The challenged rule thus purports to elaborate statutory criteria. The statute further directs, however, that the rule’s elaboration of the statutory criteria conform with medically accepted standards. Section 460.4104(9)(a), Florida Statutes (1993). The statute defines “medically accepted standards” for peer review as “those standards of care, skill, and treatment which are recognized by a reasonably prudent similar health care provider as being acceptable under similar conditions and circumstances.” Section 460.403(6), Florida Statutes (1993). Accordingly, if the rule conforms to that standard as defined by the statute, the board has not exceeded its grant of rule-making authority.
It is not clear on the record whether or not the challenged rule conforms to the statutory standard of “medically accepted standards.” There is no medical testimony from which we are able to discern the conformity of the rule to the statute. The hearing officer concluded that the statutory definition has repeatedly defied challenge, although he provides no authority in support of that conclusion. Moreover, we have found no case that considered a challenge to “medically accepted standards” as defined by chapter 460.[2] The central issue of this appeal is whether the challenged rule establishes valid criteria to govern the Board’s actions. The statute restricts the criteria to conform to medically accepted standards and defines that term by reference to “a reasonably prudent similar health care provider.” § 460.403(6), Florida Statutes (1993). Because there was no evidence taken below, there is no evidence in the record to determine if the rule does, in fact, conform to that standard.
Nonetheless, the challenged rule enlarges, modifies, or contravenes the specific provisions of the law implemented. “Medically accepted standards,” as defined by the statute, depends for its meaning on “a reasonably prudent similar health care provider.” Section 460.403, Florida Statutes (1993). The challenged rule, which was intended to guide the members of the peer review committees, fails to elaborate the statutory standard. Rather than elaborate the statutory standard, the challenged rule replaces that standard with the personal judgment of the members of the peer review committee. “Appropriate medical treatment,” according to the challenged rule, is that treatment which “appears” to the members of the review committee to conform to the treating physician’s diagnosis, “as reviewed by the peer review committee.” Rule 59N-17.007(6)(a), Florida Administrative Code. The other definitions similarly defer for the determinations involved to the personal judgment of the members of the review committee. The challenged rule thus provides no guidance to the actions of the committee external to the committee members themselves.[3] The challenged rule vests absolute *1054 discretion in the committee members and, therefore, provides no criteria or standards. The Legislature did not intend this result in mandating elaboration of a statutory standard by rule-making. The challenged rule thus enlarges, modifies, or contravenes the statute and is invalid, therefore.
Similarly, the challenged rule is vague, fails to establish adequate standards, and vests unbridled discretion in the committee. The challenged rule is inordinately vague. The rule defines each statutory term passively as “a determination made.” Although there is no grammatical indication of agency, the Board’s counsel conceded at oral argument that the peer review committee itself makes the determination. If so, the challenged rule fails to establish adequate standards. Indeed, the rule establishes no standard at all. The rule, which purports to elaborate a statutory standard to guide committee action, circularly defines the standard as a determination made by the committee itself. The challenged rule, from which the statute demands guiding criteria, is thus vague, fails to establish adequate standards, and vests unbridled discretion in the committee. It is therefore an invalid exercise of delegated legislative authority.
Finally, for the reasons discussed above, the rule is also arbitrary and capricious. The rule defies a deliberative reading. It is thick with terms more uncertain by passive grammatical construction than the statutory language that it purports to define. The rule thus serves more to obfuscate the statutory language than to elaborate statutory criteria or standards. It is irrational to obscure terms for which the statute demands clarification by rule-making. It is also not rational to elaborate statutory standards to guide the discretion of the committee with a rule that depends upon the judgment of the committee members themselves for its determination. The rule is therefore arbitrary and capricious. Agrico Chemical Co. v. Department of Environmental Regulation, 365 So.2d 759, 763 (Fla. 1st DCA 1978), cert. denied, 376 So.2d 74 (Fla.1979).
Having found the challenged rule invalid, we decline to address Merritt’s second issue, whether the challenged rule should elaborate statutory standards as rules in addition to the statutory definition of medically accepted standards.
The order is, therefore, REVERSED.
ZEHMER, C.J., BARFIELD, J., and SHIVERS, Senior Judge, concur.

. Although section 460.4104 directs the board to “establish criteria for screening requests for peer review," § 460.4104(2), Florida Statutes (1993) (emphasis supplied), this section does not provide specific statutory authority to adopt "criteria or standards" for peer review. Neither does the chapter otherwise provide specific rule-making authority directing the agency to adopt "criteria or standards” for peer review purposes. Rather, section 460.4104(9)(a) mandates merely that criteria or standards for peer review be adopted as rules. Section 460.4104(9)(a) thus mandates the exclusive reliance upon rule-making, as opposed to development of statutory standards by ad hoc litigation, for establishing criteria or standards for peer review. The board’s rule-making authority remains, therefore, the broad grant provided by section 460.405. We therefore reject Merritt's contention that section 460.4104 specifically limits the general broad grant of rule-making authority provided by section 460.405.

. There is, of course, the so-called national standard in professional negligence cases which holds non-specialist physicians to "that degree of care and skill which is expected of a reasonably competent practitioner in the same class to which he belongs, acting in the same or similar circumstances.” 4 Stuart M. Speiser, Charles F. Krause & Alfred W. Gans, The American Law of Torts, § 15:19 at 432 (1987). With some inter-jurisdictional variation as to the application of the locality rule to this standard, it is otherwise widely accepted. The hearing officer may have been referring to this standard of care for professionals in tort actions in concluding that the definition has repeatedly defied challenge. This standard was developed not for measuring medical performance in peer review, however, but for evaluating the admissibility of testimony and evidence from expert medical witnesses. Id. at 427.

. The Appellee contends that the committee members are themselves “reasonably prudent similar health care providers.” Therefore, any determination made by them would satisfy the *1054 statutory definition of "medically accepted standards." This contention fails for two reasons. First, there is no evidence in the record that the peer review committee would be constituted by "reasonably prudent” health care providers, similar to the physician being reviewed. Secondly, even if there were evidence to so indicate, the statute demands reliance upon a settled standard. The rule would replace the statutory standard with the judgment of the individual members of the committees.